AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

F I L E D

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Virginia

JUN - 2 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| All Funds Held in Virginia College Savings Plan | ) | Case No. 1:17SW301 |
| Account Nos. 10103505 & 10102004, | ) | |
| Held in Name of Buffy Frank For Benefit of | ) | |
| Corey Frank & Victoria Frank | ) | |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Eastern___ District of ___Virginia___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___981(a)(1)(C)___ *(describe the property)*:

All funds held in Virginia College Savings Plan account nos. 10103505 and 10102004, held in the name of Buffy Frank for the benefit of Corey Frank and Victoria Frank; also subject to seizure pursuant to 28 U.S.C. § 2461(c)

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

*Applicant's signature*

Reviewed by AUSA/SAUSA:

AUSA Karen L. Taylor

Michelle L. Rankin, FBI Special Agent

*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___June 2, 2017___

City and state: Alexandria, Virginia

/s/

Ivan D. Davis
United States Magistrate Judge



**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF:**<br>Any and all funds held in Virginia College Savings Plan account numbers 10103505 and 10102004, held in the name of Buffy Frank, for the benefit of Corey Frank and Victoria Frank | 1:17SW301 |

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Special Agent Michelle L. Rankin, being duly sworn, hereby depose and state under oath that the following is true:

### AFFIANT'S EXPERIENCE

1.      I am a Special Agent employed by the Federal Bureau of Investigation (FBI). I have been so employed since 1999. Since 2010, I have been assigned to the Asset Forfeiture/ Money Laundering Squad in the FBI's Washington, D.C., Field Office (Northern Virginia Resident Agency). My investigative assignments include investigating the asset forfeiture aspects of suspected violations of numerous federal statutes including but not limited to: federal anti-money laundering statutes (18 U.S.C. § 1956 and 1957), distribution of controlled substances (21 U.S.C. § 841), mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and health care fraud (18 U.S.C. § 1347) violations. I have received training in Advanced Money Laundering Techniques and Complex Financial Manipulation.

2.      The information contained in this affidavit is based, in part, on my personal knowledge and observations during the course of this investigation, as well as information

1

provided to me by other law enforcement agents, and is based on a review of various documents and records. Additionally, this affidavit is based upon my training and experience as well as that of other law enforcement agents working with me in this investigation. The dates listed in the affidavit should be read as "on or about" dates. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of the information about which I, or collectively the other agents involved in this investigation, have knowledge.

### PURPOSE OF AFFIDAVIT

3.        Since in or around January 2017, the FBI Washington Field Office, has been investigating allegations that Jon Lawrence Frank (J FRANK), devised and intended to devise a scheme to defraud NCI Information Systems, Inc (NCI), a firm providing information technology and professional services to U.S. Government agents, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals and sounds in violation of Title 18, United States Code, Section 1343.

4.   The investigation has revealed that J FRANK, using his position as Controller of NCI, as well as his detailed knowledge of its systems and operations, systematically directed over $19 million in fraudulent payments from NCI's payroll account to his own personal financial accounts. Using his position at the company, J FRANK was able to personally authorize the fraudulent payments by directing that they be made from accounts he controlled, and from accounts that would not require him to secure any additional approvals. J FRANK also took affirmative steps to conceal the fraudulent transfers to avoid detection. J FRANK falsified documentation, including

bank account statements, to make the transactions appear legitimate and circumvent the company's controls. The falsified documents were intended to mislead the company and its employees and agents into incorrectly believing that the payments were made to an NCI vendor to pay employee health benefit expenses, rather than for J FRANK's own personal enrichment. This affidavit supports an application for a civil and criminal seizure warrant for the below-listed assets (Subject Assets) as traceable proceeds of the above violations.

5.      The subject funds may be seized because there is probable cause to believe they constitute or were derived from proceeds of the above wire fraud and are therefore subject to civil forfeiture pursuant to Title 18, United State Code, Sections 981(a)(1)(C) and/or Title 18, United States Code, Section 984; and subject to criminal forfeiture pursuant to Title 28, United States Code, Section 2461(c).

## ASSETS TO BE SEIZED

6.      This affidavit is in support of a civil and criminal seizure warrant for the following Subject Property:

> Any and all funds held in Virginia College Savings Plan account numbers 10103505 and 10102004, held in the name of Buffy Frank, for the benefit of Corey Frank and Victoria Frank

## PROBABLE CAUSE

7.      JON LAWRENCE FRANK (J FRANK), 47 years old, who is known to reside in Nokesville, Virginia, was Vice President and Controller for NCI Inc., an information technology and staffing services firm in Reston, Virginia. J FRANK was employed by the company from March 2000 until January 2017. As the Controller, J FRANK had access to the company's financial statements, general ledger, payroll, and bank accounts.

3

8.      In late 2016, NCI uncovered a discrepancy in its financial records. In the wake of that finding, NCI commenced an internal review to ascertain the source of the discrepancy. According to a representative for NCI, by the review's conclusion, it had uncovered account statements, e-mails, and other documentary evidence demonstrating that the discrepancy had resulted from a series of improper payments that had been approved by J FRANK, and that were directed to a bank accounts bearing his name. NCI's representatives met with J FRANK and his attorney and discussed his actions which had caused the transfer of fraudulent payments to his personal bank account. During the meeting, J FRANK admitted that he had used his position at NCI to make unsubstantiated payments from its payroll account into his personal checking account of approximately $11 million over a period of multiple years, and that the majority of the stolen funds had been obtained by him in the preceding two to three years.

9. In January 2017, Special Agents of the FBI interviewed a witness who attended the meeting with NCI Inc.'s representatives and J FRANK.   During the meeting, the witness heard J FRANK acknowledge he had been making unauthorized payroll transfers into his personal accounts for about ten years, and had used those funds to purchase real properties and vehicles. Also during the meeting, J FRANK explained that he originally used his BB&T account but then switched to a PNC account and estimated he had transferred $11 million over those years. In addition, the witness heard J FRANK describe the mechanics of his scheme to defraud the company.

## SCHEME TO DEFRAUD

10.      To facilitate the embezzlement, J FRANK prepared fraudulent payment requests using a template he obtained from an NCI vendor to create the false appearance that the improper

bank transfers were legitimate payments. The vendor sent payment requests to NCI using a secure email system and J FRANK fraudulently recreated email payment requests that appeared to be sent from that system. J FRANK also altered certain bank account statements using Adobe software to disguise his fraudulent payments.

11.     As Controller of the Company, J FRANK had access to NCI's payroll system. J FRANK used this access to direct NCI's bank, which maintained NCI's payroll account, to carry out transfers of NCI funds in the amounts and to the accounts specified by J FRANK in the falsified reimbursement e-mail requests.

12.     A witness who attended the meeting between J FRANK and NCI representatives heard J FRANK explain how he used NCI's legacy payroll system for these fraudulent transfers which J FRANK accessed by calling SunTrust Bank to initiate the transfer of funds to his PNC Bank account. J FRANK described the legacy payroll system as a back up to the current main system if it was down for some reason and to make payments to certain employees. In addition to calling the bank to effectuate the transfer of funds from NCI's SunTrust Account to his personal bank account, J FRANK accessed NCI's SunTrust Bank payroll account statements online, downloaded the statements to his office computer, and altered them using Adobe software to obscure the true transactions to make it appear consistent with payments to the vendor. He then caused the altered bank statements to be entered into NCI's general ledger. When auditors questioned J FRANK about the transactions, he referred them to the altered documents. Taken together, statements by J FRANK, witness interviews, and documents provided by NCI indicate J FRANK conducted each of these actions at the NCI offices in Reston, Virginia.

13.     Further, during the meeting with J FRANK and NCI's representatives the witness heard J FRANK offer to return some of the money to NCI Inc. by liquidating his assets which he believed would raise $7.5 million.

14.     I have reviewed NCI's Sun Trust Bank records that were provided to J FRANK during his meeting with NCI representatives. During the meeting, J FRANK reviewed records associated with two transactions and confirmed the records were part of his scheme to defraud NCI Inc. By calling Sun Trust Bank, J FRANK caused the electronic transfer of $351,264.15, on October 3, 2016, from NCI's Sun Trust main payroll account xx7646 to his personal PNC Bank Account xx7539. By calling Sun Trust Bank, J FRANK caused the electronic transfer of $359,997.32, on January 15, 2016, from NCI's Sun Trust xx7646 to his personal PNC xx7539. A Sun Trust Bank employee explained to investigating agents that the server location for such transactions is located in Georgia. A PNC Bank employee was contacted and advised that the mainframe associated with these transactions was located in Virginia, thereby causing the transfer of funds from NCI's account into his personal account by means of wire communication in interstate commerce.

## INCOME AND FINANCIAL TRACING

15.     Your affiant has reviewed account records associated with J FRANK and his wife, Buffy Ann Frank (B FRANK). Based on a review of records provided by NCI and review of the FRANK's financial accounts from January 2010 through January or February 2017, your affiant has identified over $19.4 million in fraudulent proceeds that were deposited directly into three accounts held by J FRANK and/or joint accounts with B FRANK. The fraudulent funds represent the overwhelming majority of deposits into their accounts. A portion of the fraudulent proceeds were moved between multiple other accounts held by the FRANKs and/or used to

purchase multiple real properties, multiple luxury automobiles which were traded-in for newer

models on a regular basis, luxury personal items, and used to fund two Virginia 529 college

savings accounts for the benefit of their two children.

16.      According to NCI, J FRANK received an annual salary of approximately

$180,000 to $200,000, and typically received annual bonuses of approximately $40,000.  Based

on a review of bank records, J FRANK received salary deposits of approximately $4,665 (2010)

increasing to approximately $5,500 (2016) per pay cycle which averaged two payments per

month.  J FRANK also appears to have received deposits of expense reimbursements (totaling

$44,990) and bonuses.

17.      B FRANK's sole source of legitimate income was approximately $1,500 per

month of social security disability.  On a loan application signed by B FRANK in June 2016, in

conjunction with the purchase of her current residence, she listed her employment from October

2000 to December 2015 as "housewife," and for the previous eight months as self-employed at

Crescent Moon at 24 North Front LLC (Crescent).   Under the income portion of the application,

B FRANK lists her income as $4,680 per month from alimony/child support and $1,514 per

month from Social Security/Disability.  She also claimed rental income of $1,875 per month

from the condominium located at 24652 Byrne Meadow Square. The review conducted of her

bank records showed her disability and rental income consistent with her loan application.  Your

affiant has determined that both the alimony payments and rental income from real property are

sourced from fraudulent proceeds, and the amount of proceeds deposited into accounts held by B

FRANK far exceeds alimony/child support payments claimed in her loan application.  A review

of bank records from her business, Crescent Moon, shows that the business has not turned a

profit since opening, and proceeds have been transferred into the Crescent Moon accounts.

7

18.     J FRANK and B FRANK have been legally separated since 2013. J FRANK resides in Nokesville, Virginia; and B FRANK currently resides in Wilmington, North Carolina. J FRANK continues to financially support B FRANK by depositing or transferring fraudulent proceeds into accounts under the control of B FRANK. Some of these transfers (primarily checks) have included notations in the memo section of the check referencing 'alimony' payments.

## FRAUD PROCEEDS FROM NCI

19.     Your affiant has reviewed financial records from NCI, and financial accounts associated with J FRANK for the period January 2010 through January 2017. This review has revealed over $19.4 million spread over 136 deposits into J FRANK's personal accounts that cannot be accounted for as salary, bonuses, or reimbursement expenses. Based on an interview with NCI's Chief Financial Officer, your affiant confirmed that these deposits are fraudulent proceeds of the above-noted scheme to defraud. The records reviewed showed these fraudulent funds from NCI's account were deposited into three different accounts held solely or jointly by J FRANK and/or B FRANK: BB&T xx9899, BB&T xx2514, and PNC xx7539. Each of these accounts is further described in detail below.

20.     Beginning in 2010, the number of fraudulent deposits into J FRANK's personal account averaged two to three deposits per month. The average amount of each deposit was approximately $29,674. By 2016, the frequency of the deposits into his personal account had decreased, however the average amount of each transaction had increased significantly to approximately $288,655 per deposit. Below is a chart summarizing the total amount of fraudulent proceeds deposited into J FRANK's accounts from 2010 through 2016:

| Year | Total fraud deposits | Deposit account(s) |
|---|---|---|
| 2010 | $ 1,038,614.41 | BB&T xx9899, BB&T xx2514 |
| 2011 | $ 2,074,017.17 | BB&T xx9899, BB&T xx2514 |
| 2012 | $ 2,256,624.33 | BB&T xx9899 |
| 2013 | $ 2,273,044.38 | BB&T xx9899, PNC xx7539 |
| 2014 | $ 3,284,944.93 | BB&T xx9899, PNC xx7539 |
| 2015 | $ 3,238,181.43 | BB&T xx9899, PNC xx7539 |
| 2016 | $ 5,286,922.74 | PNC XX7539 |
| Total: | $ 19,452,349.39 | |

### BB&T xx9899

21.     BB&T xx9899 is a joint checking account that was opened on October 17, 1994, as account number xx4113. With a bank merger, the account was converted to BB&T account xx9899 on October 11, 2003. The signatories on the account were listed as Jon L. Frank and Buffy Ann Frank. According to BB&T, this account was closed in approximately February, 2017, and the remaining funds were transferred to another account held by B FRANK. A review of BB&T xx9899 was conducted for the period January 6, 2010, through January 9, 2017. At the beginning of the review period, the balance on the account was $116,772.73.

22.     This account appears to have been used as the primary checking account for the FRANKS until their legal separation in 2013, and directly received fraudulent proceeds from NCI. The fraudulent proceeds were directly deposited into this account until approximately October 2010, when the proceeds were briefly redirected into BB&T xx2514. Beginning in approximately July 2011, the fraud proceeds resumed being deposited into BB&Txx9899 until approximately August 2013. After August 2013, further proceeds of the fraud scheme were then deposited into J FRANK's new account (PNC xx7539).

23.     Although the direct deposit of proceeds into BB&T xx9899 lapsed for ten months in 2010/2011, and transitioned to PNC xx7539, BB&T xx9899 continued to receive deposits of

proceeds from these two accounts throughout the review period, the most recent of which was a $50,000 transaction from PNC xx7539 which cleared on January 9, 2017.

24.     Over the approximate seven year review period, all deposits into this account totaled $10,483,376.98. This total includes J FRANK's salary and expenses totaling $647,639.80; social security disability income for B FRANK totaling $79,933.00; and $6,103,067.36 in fraudulent proceeds deposited directly from NCI's account. Many of the proceeds deposited into this account were transferred into other accounts held by the FRANKS, and/or used to purchase a variety of items including the purchase or construction of real property, purchase of luxury vehicles and customizations, purchase of luxury personal items, and significant credit card payments (over $2.6 million from this account during the review period). This account was the initial funding source for the two Virginia 529 accounts as described further below.

25.     Some of the funds transferred to other accounts and investments were later re-deposited into this account and are included in the total deposits above. In addition, this account received rent payments for properties purchased with proceeds of the fraud scheme outlined above. In summation, at least $8,716,301.82 in fraudulent proceeds and other traceable proceeds were deposited into this account, and account for at least 83% of all deposits into this account. Purported legitimate salaries and expenses for J FRANK and B FRANK totaled $727,572.80, and represented only 7% of the total deposits into this account.

## PNC xx7539

26.     PNC xx7539 is an interest checking account opened on September 23, 2013. The sole signatory on the account is Jon Frank. A review of this account was conducted for the

period September 23, 2013, through January 18, 2017. As this account was opened during the review period, the account balance began at zero. This account appears to be the primary checking account used by J FRANK after his legal separation from B FRANK in 2013. Beginning September 25, 2013, (two days after the account was opened) this account began directly receiving fraudulent proceeds from NCI. The most recent transaction involving proceeds was a deposit in the amount of $379,771.01 from NCI's account on January 10, 2017.

27.      Over the approximate three year four month review period, all deposits into this account totaled $14,254,148.29. This total includes J FRANK's salary and expenses totaling $354,998.56, and $12,595,677.80 in fraudulent proceeds deposited directly from NCI's account. Many of the proceeds deposited into this account were transferred into other accounts held by the FRANKS, and/or used to purchase a variety of items including the purchase or construction of real property, purchase of multiple luxury vehicles, furniture, purchase of luxury personal items and tailored clothing, and significant credit card payments (over $1.9 million from this account during the review period). Some of the funds transferred to other accounts and investments were later re-deposited into this account and are included in the total deposits above. In addition, this account received rent payments for properties purchased with proceeds of the fraud scheme outlined above. In summation, at least $13,307,577.80 in fraudulent proceeds and other traceable proceeds were deposited into this account, and account for at least 93% of all deposits into this account. Purported legitimate salary and expenses represented only 2% of the total deposits into this account. Beginning on October 11, 2016, this account became the source of funding for the two Virginia 529 accounts.

## VIRGINIA 529 COLLEGE SAVINGS PLANS

28.      Your affiant has reviewed records from Virginia College Savings Plan (Virginia 529) that reveal J FRANK opened two accounts with Virginia 529 on July 26, 2007, for the benefit of his two children.  One of the accounts listed the beneficiary as Victoria E. Frank and the other listed Corey L. Frank as the beneficiary.  The Virginia 529 account number assigned for Victoria E. Frank is 10103505 and for Corey L. Frank is 10102004.  The initial arrangement called for bi-monthly deposits to each account in the amount of $75.00 drawn from the joint checking account of J FRANK and B FRANK, BB&T xx9899.  On or about October 11, 2016, the funding account for these accounts was changed to PNC xx7539 held by J FRANK.  Based upon a review of Virginia 529 records, the contributions were invested in a fund offered by Virginia 529, termed "Moderate Growth."

29.      On or about January 25, 2017, the ownership of these two accounts was transferred from J FRANK to B FRANK, whose address was listed as 8901 St. Ives Place, Wilmington, North Carolina 28411.

30.      Your affiant has examined bank records for J FRANK and B FRANK from January 2010 until January 2017.  From January 2010 through January 10, 2017, transfers to the Virginia 529 accounts from BB&T xx9899 and PNC xx7539 totaled $25,375.00.  As of April 21, 2017, the approximate balances on the accounts were $38,695.32 for 10102004 (Corey Frank), and $39,614.29 for 10103505 (Victoria Frank).  Virginia 529 advised that there were no third party contributors to the two accounts mentioned herein, and that the current balances on the accounts consist of contributions and capital appreciation.

## CONCLUSION

31.     Based on the information contained in this affidavit, there is probable cause to believe that the Subject Property constitutes or was derived from proceeds traceable to the wire fraud scheme and is therefore subject to seizure and civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 984; and subject to criminal forfeiture pursuant to 28 U.S.C. § 2461(c) .

32.     Thus, your affiant requests that the Court issue a seizure warrant allowing law enforcement agents with the Federal Bureau of Investigation to seize the Subject Property.

Michelle L. Rankin, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 2nd day of June, 2017.

/s/
Ivan D. Davis
United States Magistrate Judge

13